[Cite as *State v. Driscoll*, 2020-Ohio-27.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107165 |
| v. | : | |
| LOUIS DRISCOLL, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  APPLICATION DENIED
**RELEASED AND JOURNALIZED:**  January 8, 2020

---

Cuyahoga County Court of Common Pleas
Case No. CR-18-624907-A
Application for Reopening
Motion No. 529406

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar, Assistant Prosecuting Attorney, *for appellee*.

Louis Driscoll, *pro se*.

EILEEN T. GALLAGHER, A.J.:

{¶ 1}  On June 14, 2019, the applicant, Louis Driscoll, pursuant to App.R. 26(B), applied to reopen this court's judgment in *State v. Driscoll*, 8th Dist. Cuyahoga No. 107165, 2019-Ohio-1124, in which this court affirmed his convictions

for felonious assault; abduction; discharge of a firearm near prohibited premises; drug possession, all with firearms specifications; and having weapons while under disability. Driscoll now argues that his appellate counsel was ineffective for failing to argue the impropriety of maximum and consecutive sentences, instead of only raising an unreviewable Fourth Amendment issue that his guilty plea waived. The state filed its brief in opposition on July 11, 2019. For the following reasons, the court denies the application to reopen.

{¶ 2} On September 27, 2017, Driscoll had a physical altercation on a populated Cleveland street with one of his victims, E.H. Driscoll pulled his firearm as E.H. was fleeing the scene and fired two shots, with one hitting E.H. in the back of the leg and severing a major blood vessel. As a result, E.H. required surgery, followed by a three-month inpatient hospital stay. E.H. continues to suffer the effects of the gunshot injury and requires physical therapy.

{¶ 3} Approximately 12 hours later several 911 calls reported that Driscoll was standing in the middle of the street, near the location of the first incident, shooting his gun in the air and talking to himself. When police arrived, Driscoll was no longer there. While on scene, they heard screaming from the next street over and immediately responded. The officers found Driscoll on a front porch holding P.B. at gunpoint where she feared for her life as a result of his verbal threats. Police then apprehended Driscoll and found that he was highly intoxicated and in possession of cocaine, bath salts, $752, and a firearm.

{¶ 4}  In March 2018 during trial, Driscoll entered into a plea agreement and pled guilty to felonious assault with firearm specifications; abduction with firearm specifications; discharge of a firearm near prohibited premises with firearm specifications; drug possession with firearms specifications; and having weapons while under disability.  After an extensive Crim.R. 11 colloquy, the court accepted his plea and found him guilty of the foregoing offenses.

{¶ 5}  At sentencing, neither victim appeared, but Driscoll addressed the court acknowledging the extent of his wrongs and apologizing for what he had done to his victims. Driscoll sought to excuse his conduct by stating he was highly provoked, in hopes of a reduced sentence. After both parties had expressed their opinions for and against lengthy sentences, the court imposed the maximum sentence on all 5 counts to which Driscoll plead guilty, to be served consecutively, for an aggregate prison term of 23 years.

{¶ 6}  The judge justified the maximum consecutive sentences as necessary to protect the public based on the seriousness of the conduct, and she had no expectation Driscoll would follow the law because he was on postrelease control for similar conduct at the time of the instant conduct.

{¶ 7} Driscoll's appellate counsel argued in the sole assignment of error that the evidence supporting his convictions was obtained in violation of his Fourth Amendment right against unreasonable search and seizures. This court noted that appellate counsel raised issues regarding sentencing, but because they were not included as assignments of error, the sentencing arguments would not be heard.

This court affirmed the convictions based on *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 105, because Driscoll's guilty plea waived any complaint as to claims of constitutional violations not related to the guilty plea.

{¶ 8} Driscoll now claims that his appellate attorney did not consult with him before filing for appeal, and that she should have argued reviewable issues regarding maximum and consecutive sentencing, rather than nonreviewable constitutional claims.

{¶ 9} In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that the counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E. 2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E. 2d 456.

{¶ 10} In *Strickland*, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶ 11} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.

{¶ 12} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies. *State v. White*, 8th Dist. Cuyahoga No. 104224, 2017-Ohio-8056, ¶ 11.

{¶ 13} Driscoll's argument that his sentence was contrary to law is not well taken. Driscoll argues that his conduct should be considered less serious because it was strongly provoked. For the incident with E.H., Driscoll said that he had just learned that E.H. had molested his eight-year-old niece. For the incident of shooting in the street, defense counsel indicated that some witnesses would state that Driscoll was being robbed. For the incident with P.B., defense counsel said that Driscoll had sought refuge on his uncle's porch after being robbed and then was startled by P.B. coming onto the porch.

{¶ 14} The trial judge during the sentencing hearing reviewed the severity of the offenses and Driscoll's criminal history. She noted that there were three separate incidents for the indictments. The injury to E.H. was grievous, nearly killing him, requiring a three-month hospital stay and prolonged recovery and therapy, which was still not finished at the time of the hearing. Indeed, E.H.'s condition prevented him from being at the hearing. The judge also noted the danger posed by discharging a firearm in the street risking injury to anyone there. The prosecutor stated that Driscoll firing his gun caused people to cower on the floor of their homes. The judge further noted that Driscoll was under the influence of a drug and that he possessed more than the bulk amount of a Schedule I drug. The judge also recounted Driscoll threatening to shoot P.B. and causing her to fear for her life.

{¶ 15} The judge highlighted Driscoll's extensive criminal history. In 2001, he was convicted of robbery, felonious assault, and receiving stolen property. In 2007, he received 37 months in a federal prison for being a felon in possession of

drugs, and in 2012, he received another federal sentence for being a felon in possession of a firearm. Noting other criminal cases interspersed among those matters, the judge found his record to be deplorable. The judge stated: "I have no expectation that you will ever follow the law, and so I find that it's necessary to protect the public and to punish you." (Tr. 239.) She then fulfilled her duty to make the required findings to impose consecutive sentences. Given the severity of multiple harms, the multiple criminal acts, and Driscoll's criminal history, the imposition of maximum sentences was not an abuse of discretion, and there is no prejudice arising from the failure to make such an argument.

{¶ 16} Driscoll's second argument is that consecutive sentences were improper because the trial court failed to make all of the required findings under R.C. 2929.14(C)(4) and because the record failed to support those findings. A review of the record shows that the trial judge took all factors into account before imposing sentencing, made the necessary findings during the hearing, and entered them into record. The record fully supported the imposition of consecutive sentences. Therefore, his arguments are not more persuasive than his appellate counsel's argument and would not have changed the outcome of his appeal.

{¶ 17} Accordingly, this court denies the application for reopening.

_____
EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

PATRICIA ANN BLACKMON, J., and
MICHELLE J. SHEEHAN, J., CONCUR